UNITED STATES of America, Plaintiff-Appellee,

v.

Donald Earl SPANN, Defendant-Appellant.

No. 74-1352.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Jan. 23, 1975.

Decided April 30, 1975.

Charles D. McAtee, Topeka, Kan. (Eidson, Lewis, Porter & Haynes, Topeka, Kan., on the brief), for defendant-appellant.

Bruce E. Miller, Asst. U. S. Atty., Topeka, Kan. (Robert J. Roth, U. S. Atty., District of Kansas, Topeka, Kan., on the brief), for plaintiff-appellee.

Before HOLLOWAY, McWILLIAMS and DOYLE, Circuit Judges.

HOLLOWAY, Circuit Judge.

Defendant Spann was convicted by a jury of possession of a controlled substance—marihuana—in violation of 21 U.S.C.A. § 844(a) with reference to 21 U.S.C.A. §§ 802(15) and 812(c) Schedule I.[1] He appeals, making several claims predicated on the statutory definition and classification of marihuana. We conclude the arguments are without merit and affirm.

The Government proof tended to show these facts. Spann was an inmate at the United States Penitentiary at Leavenworth, Kansas, assigned to work outside the walls of the institution. On August 31, 1973, as a result of his unusual behavior and appearance, a decision was made to take him inside the walls of the institution. On his arrival at the gate, Spann was searched by Officer Logan, who removed a tobacco pouch from the left rear pocket of defendant. It was the contents of this tobacco pouch which formed the basis for the charge of possession of marihuana.

At trial Officer Logan testified that, after removing the tobacco pouch from the defendant, he examined its contents. He described the contents as a green substance which, because of its appearance and odor, appeared to him to be marihuana, based on his training and previous experience with marihuana (Tr. 71–74). The tobacco pouch, marked as Government's Exhibit 1, was then shown to Officer Logan in court. He identified it and once again examined its contents. He then testified that the contents had the appearance and odor of marihuana (Tr. 74–75). The tobacco pouch was subsequently introduced into evidence without objection (Tr. 97).

The defendant made a stipulation prior to trial that made it unnecessary for the Government to bring a chemist for the purpose of testifying at trial. Defendant stipulated that if that witness were called, he would testify that in his opinion the substance contained in Government's Exhibit 1 was "marihuana." (Brief for Appellant, 5; Tr. 235). The trial court was reminded of this stipulation during trial, and the court then informed the jury of the substance of the stipulation (Tr. 148–50). The Court advised the jury that in so stipulating, defendant was not admitting the truth of such testimony but only that, if the witness had been called, his testimony would have been to that effect (Tr. 150).

---

1. The conviction on appeal was under Count II of a three count indictment. The trial court sustained a motion for judgment of acquittal on Count III, which charged an attempt to introduce marihuana into the Leavenworth Penitentiary. The jury acquitted defendant on Count I, which charged an assault on a specialist employed at the institution.

The trial court again referred to the stipulation in its instructions to the jury, with the consent of both parties (Tr. 149). Instruction Number 16 stated (Tr. 247):

It has been stipulated and agreed by and between the parties and counsel that if the government chemist, who examined the material found in Government's Exhibit 1—that is the tobacco envelope that has been bantered around here on argument—and supplied to him for examination, were present in court and sworn for testimony, he would testify that the substance which he examined consisted of 11.4 grams of marihuana.

No objection was made to this instruction (Tr. 259–61). Defendant offered no proof to contradict the stipulated testimony, or the other evidence presented by the Government (*i. e.*, Officer Logan's testimony and Exhibit 1) which tended to prove that the contents of the tobacco pouch were marihuana (See, *e. g.*, Tr. 235–36). We turn to appellant's arguments on appeal.

Defendant's contentions are premised on the statutory definition of "marihuana" in 21 U.S.C.A. § 802(15). It states:

The term "marihuana" means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin. Such term does not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination.

I

■ Defendant first argues that the definition of "marihuana" in § 802(15) includes only designated portions of the plant Cannabis sativa L. and that, by its specificity in this respect, it excludes all the other types of Cannabis, it being known scientifically when the statute was adopted and now that Cannabis is polytypic. Defendant relies heavily on United States v. Collier, Crim.No. 43604–73 (D.C.Super., 6/14/74) in support of this argument.[2] He says that the Government proof was totally devoid of any reference to Cannabis sativa L, consisting only of proof that Logan thought the material was "marihuana" and the stipulation that the chemist would testify that in his opinion the contents of the tobacco pouch were "marihuana." (Brief for Appellant at 8–10). Therefore he says the conviction cannot stand.

Defense counsel acknowledges our unfavorable decision in United States v. Ludwig, 508 F.2d 140 (10th Cir.). In rejecting an argument similar to defendant's as to the insufficiency of the Government proof, the *Ludwig* opinion stated, id. at 142:

The keystone of this argument is, of course, that there are three distinct species of plants known collectively as marihuana; that Congress intended to criminalize only one species of marihuana; and that a contrary interpretation of the pertinent sections would leave the average citizen without sufficient notice of the activity sought to be prohibited. This same argument has been made in numerous cases and has been uniformly rejected.

\*   \*   \*   \*   \*   \*

In the instant case, the government's expert chemist testified that the "different types" of marihuana are the same, and the defendant's expert testified that the "different types" of marihuana are distinct from each other. Having considered that testimony,

---

**2.** The scientific authorities supporting the polytypic view, which are substantial, are reviewed in detail in the *Collier* opinion.

582

the trial court instructed the jury that the statutory definition of marihuana included Cannabis indica as well as Cannabis sativa L. We perceive no reason for concluding as defendant would have us do, that the instruction erroneously stated the law, and we accordingly reject the defendant's argument that the government failed to show that the material found in defendant's automobile was either "marihuana" within 21 U.S.C. § 812(c) or a "controlled substance" within 21 U.S.C. § 841(a)(1).

While it could be argued that *Ludwig* was based on an acceptance of the Government's expert testimony, outlined above, we feel it more broadly rejected the argument of defendant that the statute outlawed only one type of Cannabis. See United States v. King, 485 F.2d 353, 360–61 (10th Cir.); United States v. Walton, 514 F.2d 201 (D.C.Cir. 1975).

Defendant urges us to reconsider *Ludwig* in light of the *Collier* case. We are not inclined to reconsider or distinguish *Ludwig*. We note that while two federal district courts have accepted the argument advanced by defendant here,[3] the federal courts of appeals have uniformly rejected these contentions. See United States v. Walton, supra, and cases therein cited at n. 12. In *Walton,* the court expressly considered the rationale advanced in the *Collier* case but concluded that the sounder view is that the definition of "marihuana" in § 802(15) includes all types or species of the Cannabis plant.[4] Moreover, the *Collier* rationale has recently been rejected by the District of Columbia Court of Appeals. See United States v. Johnson, 333 A.2d 393 (D.C.App.1975). We conclude that this

first argument of defendant must be rejected.

II

■ Defendant's second contention is also based on the definition of "marihuana" in 21 U.S.C.A. § 802(15). He argues that his conviction cannot stand because there was no proof that the substance found in his possession consisted of the proscribed portions of the Cannabis plant, and that it is just as reasonable to presume that such substance consisted of the portions of the plant excluded from the proscription of the statute (*i. e.,* the mature stalks, etc.). Assuming that the Government had the burden of proving this point, see United States v. Harpel, 493 F.2d 346, 350–51 & n. 7 (10th Cir.) —a question we do not decide—we feel the stipulation made as to the Government chemist's testimony is dispositive of this issue.

■ As stated, the defendant stipulated that the Government chemist, if called, would testify that the contents of the tobacco pouch found in defendant's possession were "marihuana." As defendant now emphasizes, "marihuana" is defined by § 802(15) so as to include only certain portions of the Cannabis plant. In view of this definition we feel that the stipulation, made in connection with the charge of possessing "approximately 11.4 grams of marihuana,"[5] fairly construed, served as evidence that the substance in defendant's possession did indeed consist of the proscribed portions of the Cannabis plant. We cannot agree that the stipulation did not go that far. A stipulation with reference to testimony designed to shorten trial should be construed in the furtherance of justice.

---

3. See United States v. Lewallen, 385 F.Supp. 1140 (W.D.Wis.1974); United States v. One 1966 Chevrolet Sedan, 14 Crim.L.Rep. 2387 (S.D.Fla.1974).

4. The *Walton* opinion is most persuasive to us, reasoning that Congress intended to outlaw all species of marihuana since all types possess the toxic agent tetrahydrocannabinol. "The most cursory reading of the legislative history

of the various provisions outlawing marijuana permit no other conclusion." *Walton,* supra at 202.

5. Count II alleged that Spann "did unlawfully, knowingly, and intentionally possess a controlled substance, to wit: approximately 11.4 grams of marihuana, in violation of 21 U.S.C. 841(a) with reference to 21 U.S.C. 802(15) and 21 U.S.C. 812(c) Schedule I."

See Chicago & N. W. Ry. Co. v. Froehling Supply Co., 179 F.2d 133, 136 (7th Cir.). On appeal we should not accept an argument that a stipulation at trial as to an ultimate fact or a conclusion did not cover a necessary subsidiary fact. Id. at 135; see Johnson v. United States, 325 F.2d 709, 711–12 (1st Cir.); cf. United States v. Harding, 507 F.2d 294, 298 (10th Cir.), cert. denied, —— U.S. ——, 95 S.Ct. 1437, 43 L.Ed.2d 679.

■ Of course, a stipulation as to the testimony a witness would give if called, although it may constitute evidence of the facts covered, is not an admission of the truth of such testimony and does not prevent a party from attacking it as he might attack the testimony itself, had it been given. See generally 83 C.J.S. Stipulations § 23f (1953). However, here no attempt was made at trial to attack the probative value of the stipulation insofar as it constituted evidence that the contents of the tobacco pouch were proscribed "marihuana," in the legal sense of that term. Nor was there any indication that the stipulation as to "marihuana" was limited to something other than material within the legal definition of the term. Having failed to attack or limit the stipulated testimony at trial, defendant's argument comes too late. Johnson v. United States, supra at 712.

Thus we also reject defendant's contention that his conviction cannot stand because there was no proof that the substance he possessed consisted of the proscribed portions of the Cannabis plant.[6]

### III

■ Defendant's last contention is that his conviction cannot stand because the record is devoid of any evidence that the substance found in his possession, even if it consisted of the prohibited portions of Cannabis sativa L., had sufficient "hallucinogenic" qualities to estab-

lish its usability as a narcotic. He says that there was no proof that the substance contained even the slightest trace of the chemical THC (tetrahydrocannabinol), the active, intoxicating ingredient in marihuana. He argues that such proof is an essential element to sustain a conviction for possession of a "narcotic drug."

This argument appears to be based primarily on United States v. Collier, supra, and Payne v. United States, 294 A.2d 501 (D.C.App.). Reliance on these cases is misplaced, however, because of the difference between the District of Columbia statute they applied and the federal statute with which we are concerned. D.C.Code § 33–402 provides in relevant part that: "It shall be unlawful for any person to . . . possess . . . any *narcotic drug,* except as authorized by this chapter." (emphasis added). Construing this statute in the light of prior District of Columbia cases such as Payne v. United States, supra, the court in *Collier* reasoned that a defendant cannot be convicted under § 33–402 for illegal possession of a "narcotic drug," to wit, marihuana, unless there is proof presented at trial that the marihuana found in a defendant's possession contained an amount of THC sufficient to render it usable as a "narcotic drug."

In contrast, the federal statutory scheme involved here speaks in terms of "controlled substances" rather than "narcotic drugs." 21 U.S.C.A. § 844(a), under which defendant was convicted, provides that: "It shall be unlawful for any person knowingly or intentionally to possess a *controlled substance* . . . ." (emphasis added). "Marihuana" is classed as a "controlled substance" by 21 U.S.C.A. § 812(c) Schedule I (c)(10). By placing "marihuana," as such, in the list of controlled substances under Schedule I, Congress has in effect determined that possession of some quantity of "marihuana," regardless of its particular halluci-

---

6. This reasoning which leads us to reject defendant's second argument is equally dispositive of his first contention that there was no

proof that the substance he possessed was Cannabis sativa L. as opposed to other types of Cannabis.

nogenic qualities, is proscribed.[7] The propriety of the classification of "marihuana" as a "controlled substance" under Schedule I has been upheld against various constitutional challenges. See United States v. Kiffer, 477 F.2d 349 (2d Cir.), cert. denied, 414 U.S. 831, 94 S.Ct. 62, 38 L.Ed.2d 65; United States v. Rodriquez-Camacho, 468 F.2d 1220 (9th Cir.), cert. denied, 410 U.S. 985, 93 S.Ct. 1512, 36 L.Ed.2d 182; United States v. LaFroscia, 354 F.Supp. 1338 (S.D.N.Y.), aff'd, 485 F.2d 457 (2d Cir.). There was no showing made to challenge the propriety of the classification in this case. Hence this conviction is adequately supported by the proof which permitted the inference that defendant knowingly or intentionally possessed a "controlled substance"—here marihuana—without proof of its usability as a "narcotic drug."

We are satisfied defendant's arguments are without merit and the judgment is affirmed.

---

7. It seems noteworthy in this connection that "Tetrahydrocannabinols" are separately made a controlled substance under Schedule I. See 21 U.S.C.A. § 812(c) Schedule I (c)(17).