UNITED STATES of America,
Plaintiff-Appellee,

v.

Donald R. LATIMER,
Defendant-Appellant.

No. 84–2651.

United States Court of Appeals,
Tenth Circuit.

Dec. 27, 1985.

Kenneth M. Carpenter, Carpenter and Carpenter, Chartered, Topeka, Kan., for defendant-appellant.

Richard Hathaway, Asst. U.S. Atty. (Benjamin L. Burgess, Jr., U.S. Atty., and Kurt J. Shernuk, Asst. U.S. Atty., with him on brief), Topeka, Kan., for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, and BARRETT, Circuit Judge, and GREENE, District Judge.*

J. THOMAS GREENE, District Judge.

Appellant in this case seeks review of his conviction on one count of distribution of heroin in violation of 21 U.S.C. § 841(a)(1) and one count of conspiracy to distribute heroin in violation of 21 U.S.C. § 846 and § 841(a)(1). Appellant raises three issues on appeal:

1) whether he was deprived of his Fifth Amendment due process rights when the United States did not divulge alleged exculpatory evidence prior to trial;

2) whether the United States knowingly used perjured testimony in violation of appellant's due process rights;

3) whether appellant's conviction on conspiracy charge alleged in one count of the indictment was inconsistent with failure to

* Honorable J. Thomas Greene, United States District Judge for the District of Utah, sitting by designation.

convict as to the corresponding substantive count.

We find no merit in any of these claims and affirm defendant's conviction below.

## STATEMENT OF THE CASE

This case arose as a part of an overall drug investigation in the Junction City, Kansas area. The investigation commenced in February 1983, and involved the Federal Bureau of Investigation, the Kansas Bureau of Investigation, The Department of Alcohol, Tobacco and Firearms and the Junction City Police Department. Appellant's convictions involved two separate transactions. The first transaction occurred on August 15, 1983, and the second transaction on September 20, 1983. In both instances law enforcement officers used informants to make drug purchases from the appellant.

The first transaction involved an informant by the name of Donnie Wishom, who contacted the appellant on August 15, 1983, concerning the purchase of heroin. Wishom went with law enforcement officers to Junction City where he met the appellant from whom he purchased one-half ounce of heroin and returned it to law enforcement officers. Both Wishom and his car were searched by law enforcement officers prior to the meeting.

The second transaction involved an informant by the name of Ray Winters. Winters had contacted law enforcement authorities in May 1983 about his knowledge concerning the distribution of drugs in the Junction City area. On September 20, 1983, Drug Enforcement Administration ("DEA") agents contacted Winters and asked him to make a heroin purchase from appellant. After being searched, Winters left in his truck in quest of appellant, followed by DEA agents. Winters located the appellant, purchased one-quarter ounce of heroin from him and turned it over to the DEA agents. Neither of the informants in these transactions knew the identity or existence of the other.

At trial, Winters testified that his wife was a heroin addict during the time he was working with the law enforcement officers. However, Winters testified that he was told by the law enforcement officers that he could not buy drugs or participate in the purchase of drugs for his wife or commit any other illegal act while he was an informant. Winters also testified that his wife was not working for the government and that there was no agreement with the government concerning his wife that they would not prosecute her for her drug activities. Winters did testify that he was present on occasions but did not participate in transactions when his wife would purchase heroin from the appellant for her own use. Winters also testified that he called DEA agents prior to going with his wife to purchase heroin but that he did not know whether he and his wife were followed when they went to make the purchase of drugs. Winters speculated that he was observed going in and out of Junction City, Kansas, because he was aware of the large scale investigation going on there concerning the use of drugs.

Appellant postulates that an agreement existed between the informant Winters and the DEA to the effect that Winters' wife could make heroin purchases and the law enforcement officers would "look the other way." In this regard, the informant Winters testified inconsistently on cross examination as follows:

> Q: And your wife purchased drugs while you were working for the Government?
>
> A: Right.
>
> Q: And the government knew that?
>
> A: Right.
>
> Q: And the government just looked the other way?
>
> A: Right.
>
> Q: And that was the agreement?
>
> A: *No, they wasn't* [sic] *looking the other way.* (Emphasis added)

DEA agents Zettle and Evans both testified that there was no "deal" or arrangement by the government concerning Winter's wife's drug usage or drug purchases. At a post-trial hearing on this issue, DEA

special agent Evans again testified that absolutely no arrangement exited between law enforcement agencies and Winters with regard to his wife. The trial court denied appellant's motion for new trial.

## I. Denial of New Trial for Failure to Disclose Alleged Exculpatory Evidence

The law in this Circuit is clear that denial by the trial court of a motion for new trial will be overturned only on a showing of "clear abuse of discretion." *United States v. Ramsey*, 726 F.2d 601, 604 (10th Cir. 1984); *United States v. Draper*, 762 F.2d 81 (10th Cir.1985).

■ The basis for appellant's motion for new trial was the premise that there was an agreement between the informant Winters and the government not to charge Winters' wife with drug usage or drug purchases. But Winters' testimony at trial and the testimony of the government agents do not reflect the existence of such an agreement. The trial court found no such agreement and that the government was not obliged to disclose information sought by appellant. There is ample evidence in the record to justify denial of the motion for new trial, and we will not disturb the trial court's ruling.

## II. Alleged Reliance on Perjured Testimony

■ Appellant argues that the informant committed perjury when he denied having an agreement with law enforcement officials concerning his wife. A review of the record indicates apparent inconsistency or confusion as to statements by Winters concerning knowledge of the government about drug activities of his wife. Apparently Winters believed that the government was acquiescing in his wife's drug purchases. There is ample evidence in the record, however, to conclude that there was no agreement concerning Winters' wife. The trial court ruled that Winters had not committed perjury. We find no basis to hold that the trial court erred as a matter of law

in finding that the testimony of Winters as to this issue was not perjury.

Even if the informant's testimony could be construed as perjury the test laid out in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and its progeny would not require reversal on these facts. Under *Brady*, the prosecution is required to turn over to the defendant evidence favorable or exculpatory to the defendant's case when such evidence is material as to guilt or punishment. In *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Court articulated three situations where the *Brady* doctrine applies. First, where the prosecution knew or should have know that its case contained perjured testimony a conviction will be set aside "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Agurs* at 103, 96 S.Ct. at 2397. Second, where the prosecution fails to respond to a specific request for information, a new trial should be granted if the withheld evidence might have affected the outcome of the trial. *Agurs* at 104, 96 S.Ct. at 2397. Finally, where the defendant generally requests exculpating evidence and such evidence is withheld, reversal is required only if the omitted evidence "creates a reasonable doubt that did not otherwise exist." *Agurs* at 112, 96 S.Ct. at 2401.

■ Under the first situation where the Brady doctrine applies the government could not possibly have relied on perjured testimony because the evidence in controversy here came out on cross examination elicited by appellant. The second situation does not apply because the appellant never specifically requested the information. This leaves the third situation in which it is contended that the United States failed to disclose the alleged agreement even though the appellant had made a general request for relevant information. But under the standard for reversal espoused in *Agurs*, we cannot say that this evidence would be sufficient to create a reasonable doubt that appellant sold Winters one-quarter ounce of heroin as charged. Appellant argues

vigorously that if the jury had known about the alleged agreement concerning Winters' wife the credibility of Winters could have been challenged and this could have created a doubt as to Winters' reliability. But Winters had already testified that he was a convicted felon, that he had used drugs for more than ten years and that he continued to do so, and that he offered to work as a paid informant because of financial need and to help his wife, whom he testified was a heroin addict. The fact that the DEA may have allowed Winters' wife to make heroin purchases is hardly likely to have convinced the jury that Winters was not telling the truth about purchasing heroin from appellant. In all events, appellant failed to bear the required burden of demonstrating that (1) the prosecution suppressed the evidence, (2) the favorable character of the suppressed evidence; and (3) the materiality of the suppressed evidence. *United States v. Warhop*, 732 F.2d 775 (10th Cir.1984).

### III. *Alleged Conflicting Verdicts*

Appellant was convicted on two counts of a four count indictment. One count for *distribution* of heroin on September 20, 1983, and one count for *conspiracy to distribute* heroin on August 15, 1983. The jury was unable to reach a decision on the substantive count of heroin distribution which occurred on August 15, 1983, and a mistrial was declared by the Court as to that count. Appellant argues that the verdicts rendered by the jury are inconsistent under the circumstances and that such inconsistency requires reversal.

Since the jury did not reach a verdict and did not *acquit* on the substantive count relating to the August 15, 1983 transaction, technically we need not reach appellant's contention that the jury rendered inconsistent verdicts. But even if the jury had acquitted as to the distribution charge, the crimes charged involve proof of different elements. Therefore, the verdicts are not necessarily inconsistent. In all events, however, each count of an indictment constitutes a separate offense, and

consistency in the verdict is not required. *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932). *United States v. Powell*, —— U.S. ——, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); *United States v. Swafford*, 766 F.2d 426, 430 (10th Cir.1985); *Speers v. United States*, 387 F.2d 698 (10th Cir.1967), *cert. denied*, 391 U.S. 934, 88 S.Ct. 1844, 20 L.Ed.2d 853 (1968); *Maxfield v. United States*, 360 F.2d 97, 99 (10th Cir.1966).

The judgment of the trial court is affirmed.

AFFIRMED.